IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JANET YUKARI HOWSER,<br><br>         Plaintiff,<br><br>    vs.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>         Defendant. | Case No. 20-cv-00232-DKW-KJM<br><br>**ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS[1]** |

Plaintiff Janet Yukari Howser appeals the denial of disability insurance benefits prior to June 21, 2018, arguing that the Administrative Law Judge (ALJ) improperly assessed her symptom testimony and improperly rejected the medical opinions of various doctors. The Court agrees that the ALJ did not properly discuss the opinions of two of the doctors Howser identifies, making it impossible for this Court to review why those doctors' opinions were minimized. As a result, this case is REMANDED for clarification of the ALJ's decision.

## BACKGROUND

### I.   Review of Disability Claims

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA). 20 C.F.R. § 404.1520. First, the claimant must

---

[1] Pursuant to Local Rule 7.1(c), the Court elects to decide this matter without a hearing. Therefore, the hearing scheduled for May 21, 2021 (Dkt. No. 23) is VACATED.

demonstrate that she is not currently involved in any substantial, gainful activity. *Id*. §§ 404.1520(a)(4)(i), (b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit her physical or mental ability to do basic work activities. *Id*. §§ 404.1520(a)(4)(ii), (c). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. §§ 404.1520(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual functional capacity (RFC) to perform work. *Id*. § 404.1520(e). The evaluation then proceeds to a fourth step, which requires the claimant to show her impairment, in light of the RFC, prevents her from performing work she performed in the past. *Id*. §§ 404.1520(a)(4)(iv), (e), (f). If the claimant is able to perform her previous work, she is not disabled. *Id*. § 404.1520(f). If the claimant cannot perform her past work, though, the evaluation proceeds to a fifth step. *Id*. §§ 404.1520(a)(4)(v), (g). At this fifth and final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy. *Id*. § 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at Step Five, the burden moves to the Commissioner).

If the Commissioner fails to meet this burden, the claimant is deemed disabled. 20 C.F.R. § 404.1520(g)(1).

## II.    Howser's Administrative Proceedings

On October 19, 2018, the ALJ issued a decision finding Howser "not disabled" prior to June 21, 2018, but also finding her "disabled" from that date onwards. Administrative Record (AR) at 192-193. On January 28, 2019, the Appeals Council vacated the ALJ's decision and remanded for further proceedings. *Id*. at 204-205. Specifically, the Appeals Council observed that, in assessing Howser's RFC, the ALJ gave significant weight to a functional capacity test from July 3, 2014 that could not be located in the record. *Id*. at 204. As a result, the Appeals Council instructed the ALJ to, *inter alia*, provide a "specific reference to the medical source who provided the [functional capacity test]" and include the test in the record. *Id*.

On August 28, 2019, following remand, the ALJ issued a decision that again found Howser "not disabled" prior to June 21, 2018, but also finding her "disabled" from that date onwards. *Id*. at 31. At Step One of the evaluation process, the ALJ determined that Howser had not engaged in substantial gainful activity since the alleged onset date of July 26, 2013. *Id*. at 19-20. At Step Two, the ALJ determined that Howser had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; asthma; migraine headaches; depression;

anxiety; and, from 2019, cardiac arrhythmia. *Id*. at 20. At Step Three, the ALJ determined that Howser did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. *Id*. at 107-108.

Before reaching Step Four, the ALJ determined that Howser had the residual functional capacity to perform light work, except as follows:

> Occasional postural activities; no excessive fumes, odors, dusts, gases or poor ventilation; no hazardous machinery or unprotected heights, to include no ladders, ropes, or scaffolds; no complex work, that is, nothing above a SVP (skilled vocational preparation) level of 3; and occasional public contact.

*Id*. at 21-29.

At Step Four, the ALJ determined that Howser was unable to perform any past relevant work. *Id*. at 29. At Step Five, the ALJ made two determinations. First, the ALJ determined that, prior to June 21, 2018, jobs existed in significant numbers in the national economy that Howser could perform. *Id*. at 29-30. More specifically, a vocational expert stated that, in light of Howser's RFC, age, education, and work experience, prior to June 21, 2018, she would have been able to perform the jobs of price marker, mail sorter, and office helper. *Id*. at 30. Second, the ALJ determined that, on and after June 21, 2018, Howser's age category changed to an individual of advanced age, she had not acquired skills from past relevant work that were transferable to work with her RFC, and there were no jobs that existed in

significant numbers in the national economy she could perform. *Id*. at 29-30. These determinations resulted in the ALJ finding that Howser was not disabled prior to June 21, 2018, but she was disabled on and after that date. *Id*. at 31.

On March 25, 2020, the Appeals Council denied Howser's request for review of the ALJ's decision. *Id*. at 1.

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id*. (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* at 679; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (citations omitted).

In addition, a court may not reverse an ALJ's decision on account of an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party

5

attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). In making this assessment, the Court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id*. at 1115.

## DISCUSSION

In her Opening Brief, Dkt. No. 24, Howser challenges the ALJ's assessment of her symptom testimony and medical opinions from Dr. Linda Rowan, Dr. Michiko Bruno, and Dr. Claudette Ozoa. For the reasons discussed below, because the Court agrees that the ALJ committed legal error in assessing the opinions of some of the doctors identified by Howser, this case requires remand for clarification.

### I. Doctor Linda Rowan

The ALJ's assessment of Dr. Rowan's opinions is rolled-up in the ALJ's reliance on the functional capacity test mentioned in the Appeals Council's first decision in this case. As stated above, in that first decision, dated January 28, 2019, the Appeals Council instructed the ALJ, on remand, to include the test in the record and identify the medical source for the test. AR at 204. On remand, the ALJ accomplished *one* of those tasks by including the test in the record. *See id*. at 4686. As far as this Court can tell from reviewing the ALJ's decision, the ALJ failed to accomplish the other task: identifying the medical source for the test. In fact, a reader of the ALJ's decision would not be able to identify the source of the

functional capacity test upon which the ALJ repeatedly cites and relies. Based upon the Court's review of the test and the parties' assertions, the test was performed by physical therapist Florian Flores. *See id*; Dkt. No. 24 at 22; Dkt. No. 25 at 26. The test also reflects that Dr. Rowan did <u>not</u> agree with the findings reached by Flores−most notably, changing Flores' assessment of light exertion. *See* AR at 4686. Nonetheless, the ALJ gave significant weight to the assessment of light exertion. *Id*. at 26. The ALJ also gave no more than partial or less weight to Dr. Rowan. *Id*. at 27.

The problem with this is that, at no point, does the ALJ explain why more weight was given to a physical therapist than to Howser's treating doctor. As Howser points out in her briefing, and the government does not dispute, a physical therapist is generally considered a non-acceptable medical source. *See* Dkt. No. 24 at 22; Dkt. No. 25 at 26. While the government is correct that a non-acceptable medical source *may* be afforded more weight than a treating doctor, *see* 20 C.F.R. § 404.1527(f)(1), much like the ALJ, the government never explains why, when taking into account the relevant regulation, it was appropriate for the ALJ to do so here. At most, the government addresses one factor−whether Flores' test/opinion is more consistent with the record evidence. Other factors, such as how often Flores

saw Howser, are ignored.[2]  More important, the ALJ discussed *none* of these factors, which is hardly surprising given that the ALJ did not even acknowledge that the functional capacity test was carried out by a non-acceptable medical source.

As a result, on remand, *inter alia*, it is incumbent upon the ALJ to not only identify the source of the functional capacity test, as first instructed by the Appeals Council, but to also explain why that source should be given more weight than the opinion of a treating doctor like Dr. Rowan, when the test itself reflects that Dr. Rowan was aware of and disagreed with many of the findings reached by Flores. The ALJ should do so while taking into consideration, and discussing, the relevant factors under 20 C.F.R. Section 404.1527(c) & (f).

## II.  Doctor Michiko Bruno

Howser argues that the ALJ erred in failing to indicate any given weight to Dr. Bruno's opinions, in "cursorily" summarizing the doctor's reports, and in providing limited analysis of the same.  Dkt. No. 24 at 33-34.  The Court agrees.  Notably, as Howser observes, in the decision, the ALJ fails to ascribe any weight to the opinion of Dr. Bruno.[3]  In fact, the ALJ does not even appear to state whether Dr. Bruno is a treating source.  It is, thus, not surprising that, similar to Dr. Rowan and

---

[2] The Court notes that, based upon the current record, this factor would appear to weigh substantially *against* giving Flores' opinion more weight than Dr. Rowan's, given that it appears that Flores met Howser only once, while Dr. Rowan treated Howser for years prior to June 2018.

[3] One could presume that the ALJ gave no weight to Dr. Bruno's opinion, but it should not be this Court's role to guess or to speculate why.

Flores above, the ALJ fails to discuss almost all of the factors relevant when weighing medical opinions. *See* 20 C.F.R. § 404.1527(c). At best, the only matter that the ALJ appears to discuss when discounting Dr. Bruno's opinions is Howser's activities of daily living. *See* AR at 26. Even if the ALJ appropriately relied on Howser's activities of daily living, though, that alone would not result in the apparent discarding of Dr. Bruno's opinions, at least not when, as here, there is no discussion of any of the other relevant factors, such as the length of the treatment relationship. As for the additional reasons the government provides for minimizing Dr. Bruno's opinions, *see* Dkt. No. 25 at 22-24, none of them are relied upon by the ALJ. Therefore, the Court does not address them herein. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (explaining that review of an ALJ's decision cannot be based on "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

As a result, on remand, the ALJ is instructed to, *inter alia*, state the weight being assigned to Dr. Bruno's opinions and to explain why. In doing so, the ALJ should take into account, and discuss, all relevant factors set forth in 20 C.F.R. Section 404.1527(c), including the nature of the treatment relationship between Howser and Dr. Bruno.

### III. <u>Doctor Claudette Ozoa</u>

Howser argues that the ALJ's determination to give Dr. Ozoa, a psychologist, limited weight was not based upon substantial evidence. Dkt. No. 24 at 35-37. Howser asserts that the ALJ offered no evidence for the determination that Dr. Ozoa's opinions were based primarily on Howser's subjective complaints. Howser further asserts that the ALJ improperly determined that Dr. Ozoa's opinions were unsupported by those of Dr. Ethan Pien, a psychiatrist. Howser also argues that Dr. Pien's opinions were "more inconsistent and vaguer" than Dr. Ozoa's, Dr. Ozoa arguably has "more expertise" in psychotherapy than Dr. Pien, and there is no evidence that Dr. Pien's ability to assess patients is any more reliable than Dr. Ozoa's.

With respect to Dr. Ozoa, the Court disagrees with Howser's assessment of the record. Essentially, on this issue, Howser asks this Court to re-weigh which of two doctors should be given more or less weight by evaluating which doctor has "more expertise" and which one is "more reliable." This the Court cannot do. *See Treichler*, 775 F.3d at 1098. Here, there was evidently a conflict between the opinions of Dr. Ozoa and Dr. Pien,[4] both of whom treated Howser for the same condition, and the ALJ determined that Dr. Pien's opinions were entitled to greater

---

[4] Howser asserts that, in one instance, Dr. Pien opined that Howser's mental health conditions "can interfere with her ability to work." Dkt. No. 24 at 35. Howser provides no explanation, though, how this opinion supports Dr. Ozoa's opinions or undermines Dr. Pien's. Further, contrary to Howser's assertion, the ALJ did "acknowledge" this statement from Dr. Pien. *See* AR at 27.

weight. While this Court may or may not have assigned similar weight to both opinions, Dr. Pien's opinions amounted to substantial evidence in this regard, and thus, remand is not necessary on this issue. *See Burch*, 400 F.3d at 679.[5]

## CONCLUSION

To the extent set forth herein, the Commissioner's decision, denying Howser's application for disability insurance benefits prior to June 21, 2018, is REVERSED. This case is REMANDED to the Commissioner for further administrative proceedings consistent with this Order. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: April 23, 2021 at Honolulu, Hawai‘i.



Derrick K. Watson
United States District Judge

---

[5] To the extent other issues are raised in Howser's opening brief, such as discounting her testimony, the Court does not address them in light of the findings herein and order remanding to the ALJ. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding to the ALJ and, as a result, declining to reach an alternative ground for remand). However, as this Court has done in the past, *see Dano v. Saul*, 2019 WL 6134468, at *6 n.11 (D. Haw. Nov. 19, 2019), the Court observes that merely because Howser can travel overseas, care for her minor grandchildren twice a week, "manage her own personal needs," make daily meals, and do cleaning, does not, without significantly more explanation, mean that her testimony is undermined or that she can do light work. *Cf. Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (explaining that an "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are *transferable to a work setting*[.]") (emphasis added, citation omitted). Among many issues with the ALJ's discussion of Howser's activities of daily living is the complete failure to more fully explain precisely what those activities involve and, then, how those activities transfer to a work setting. Simply listing a general activity and then saying that it is "consistent with light exertion" provides this Court with no ability to review why that is so.